## UNITED STATES v. ATLANTIC FRUIT CO.

(Circuit Court of Appeals, Second Circuit. March 10, 1914.)

No. 210.

1. ALIENS (§ 57*)—"ALIEN IMMIGRANT."

Alien immigrants within Act March 3, 1893, c. 206, § 8, 27 Stat. 570 (U. S. Comp. St. 1901, p. 1303), providing that all steamship transportation companies regularly engaged in transporting alien immigrants to the United States shall file certificates of the posting of the Immigration Law, etc., are those who come to the United States to remain.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 114; Dec. Dig. § 57.*

For other definitions, see Words and Phrases, vol. 1, p. 302; vol. 8, p. 7571.]

2. ALIENS (§ 58*)—IMPORTATION—TRANSPORTING ALIEN IMMIGRANTS—"REGULARLY ENGAGED"—QUESTION FOR JURY.

Defendant operated chartered vessels between Jamaica and New York for the importation of fruit. It never solicited passengers, but carried from one to five alien passengers on every steamer, generally gratuitously, they being its own employés or planters with whom it had dealings, who in some cases paid passage money. They were entered on the manifest, and the head tax was paid as required by the Immigration Law. *Held*, that whether defendant was "regularly engaged" in transporting alien immigrants within Act Cong. March 3, 1893, c. 206, § 8, 27 Stat. 570 (U. S. Comp. St. 1901, p. 1303), requiring all transportation companies regularly engaged in transporting alien immigrants to the United States to file certificates of the posting in their foreign ticket offices of the United States Immigration Law, etc., was for the jury, the term "regularly" *being regarded not as meaning "in accordance with law," but rather continuous employment.*

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 113, 114; Dec. Dig. § 58.*]

3. ALIENS (§ 57*)—IMMIGRATION LAW—POSTING—STEAMSHIP COMPANIES—CERTIFICATES—"IMMIGRANT."

Act Cong. March 3, 1893, c. 206, § 8, 27 Stat. 570 (U. S. Comp. St. 1901, p. 1303), provides that transportation companies regularly engaged in transporting alien immigrants to the United States shall certify to the Secretary of the Treasury that they have furnished and kept conspicuously posted in each of their foreign ticket offices a copy of the Immigration Law. *Held*, that where defendant was engaged in importing fruit from Jamaica, and never solicited passengers, proof that it carried from one to five alien passengers on every steamer, generally gratuitously, they

---

being its own employés or planters with whom it had dealings, some of whom paid passage money, and all of whom were entered on the ship's manifest, and for whom head tax was paid as required by the Immigration Law, such persons were not immigrants within the law.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 114; Dec. Dig. § 57.*

For other definitions, see Words and Phrases, vol. 4, p. 3410.]

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the United States against the Atlantic Fruit Company. Judgment for defendant, and the United States brings error. Affirmed.

See, also, 206 Fed. 440, 124 C. C. A. 322.

H. Snowden Marshall, U. S. Atty., and Addison S. Pratt, Asst. U. S. Atty., both of New York City.

Ralph James M. Bullowa, of New York City, for defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. The United States brought this action against the Atlantic Fruit Company to recover fines aggregating $2,-500 for its failure to file every six months, beginning January 1, 1910, the certificate required by section 8 of the act of March 3, 1893, 27 Stat. 570, which reads:

"Sec. 8. That all steamship or transportation companies, and other owners of vessels, regularly engaged in transporting alien immigrants to the United States, shall twice a year file a certificate with the Secretary of the Treasury that they have furnished to be kept conspicuously exposed to view in the office of each of their agents in foreign countries authorized to sell emigrant tickets, a copy of the law of March third, eighteen hundred and ninety-one, and of all subsequent laws of this country relative to immigration, printed in large letters, in the language of the country where the copy of the law is to be exposed to view, and that they have instructed their agents to call the attention thereto of persons contemplating emigration before selling tickets to them; and in case of the failure for sixty days of any such company or any such owners to file such a certificate, or in case they file a false certificate, they shall pay a fine of not exceeding five hundred dollars, to be recovered in the proper United States court, and said fine shall also be a lien upon any vessel of said company or owners found within the United States."

It appeared at the trial that the defendant was a steam transportation company running a line of chartered vessels with more or less regularity between the Island of Jamaica and the port of New York. Its business was the importation of fruit. It never solicited passengers by advertisement or otherwise, but did carry from one to five alien passengers on every steamer, generally gratuitously, they being its own employés or planters with whom it had dealings. In some instances passage money was paid, and manifests of all the aliens carried were furnished, and the head tax paid, as required by the Immigration Law.

[1, 2] An alien immigrant is one who comes to this country to stay, and the government offered no proof that the aliens in question were such immigrants. The inferences were all to the contrary, that they came on pleasure or business and returned to Jamaica. Judge Hough

submitted to the jury the question whether the defendant was "regularly engaged in transporting alien immigrants." The jury found a verdict for the defendant, and the United States takes this writ of error to the judgment entered thereon.

We think the court was right upon the first question, and that is enough to dispose of the case. The word "regularly" in the act cannot be construed as meaning transportation of aliens "in accordance with law," as was held in Wilson v. Gray, 127 Mass. 98, in the case of the refusal of a registered vessel engaged in a single coasting voyage to employ a pilot. This was justified, because the vessel, though registered, was at the time making a coasting voyage "regularly," that is, in accordance with law. Congress evidently intended by "regularly" in the act under consideration a continuous employment. The section speaks of offices for the sale of tickets, and requires the certificate to be filed twice a year, provisions which would not be applicable to a steamer making one or two voyages or only making occasional voyages. Although this line was running steamers regularly, the question was whether the court could say, as a matter of law, that it was regularly engaged in "transporting alien immigrants," that being an unimportant incident of its actual business and not solicited nor generally paid for. The regular business of the company was the importation of fruit. As different minds might draw different inferences from the undisputed facts, the court properly submitted the question to the jury.

[3] Indeed, we think the court might have gone farther and directed a verdict in favor of the defendant on the ground that the United States offered no proof that the aliens carried were immigrants. Section 8 of the act of 1893 can be read consistently with Act of March 3, 1903, c. 1012, 32 Stat. 1213, and Act Feb. 20, 1907, c. 1134, 34 Stat. 499 (U. S. Comp. St. Supp. 1911, p. 499), by supposing that Congress intended the notice in question to be given and certificate to be filed only by persons regularly engaged in bringing alien immigrants to this country. In these latter acts Congress undertook to bring together scattered legislation, and to amend such portions as it found inadequate. Every section of the act of 1893 was included with modifications except section 8. It was not expressly modified nor repealed nor re-enacted. There is nothing unreasonable in assuming that Congress intended that the section should remain on the statute book unchanged. The judgment is affirmed.